COMMONWEALTH *vs.* ANGEL TORRES.

Hampden. December 2, 1996. - May 1, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Practice, Criminal,* Voluntariness of statement. *Words,* "Functional equivalent."

In a criminal case in which the defendant moved to suppress his confession to police on the ground that the police did not scrupulously honor the defendant's right to cut off questioning, the judge's subsidiary findings were insufficient to support his conclusion that a dialogue between a police officer and the defendant, who was in custody, after the defendant had stopped the questioning but before Miranda warnings were readministered and the confession given, was initiated by the police in order to obtain a statement: the matter was remanded for further proceedings on the issue. [795-798]

A criminal matter was remanded for further proceedings and consideration of the issue whether the defendant's confession, given after a valid waiver of Miranda rights, was tainted by statements made previously and taken allegedly in violation of the defendant's Miranda rights. [798-800]

INDICTMENTS found and returned in the Superior Court Department on March 7, 1995.

A pretrial motion to suppress evidence was heard by *William H. Welch,* J.

An application for leave to prosecute an interloctory appeal was allowed by *Fried,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*James C. Orenstein,* Assistant District Attorney, for the Commonwealth.

*Stewart T. Graham, Jr.,* for the defendant.

ABRAMS, J. At issue is the admissibility of statements the defendant made to the Springfield police following his arrest in February, 1995. The defendant was indicted for murder in the first degree and illegal possession of a firearm. Prior to trial, the defendant filed a motion to suppress the statements, claiming that the police violated his right to remain silent af-

ter he invoked it. After an evidentiary hearing, a Superior Court judge allowed the defendant's motion to suppress. The judge ruled that the police engaged the defendant in an interrogation without readministering Miranda warnings, and therefore the defendant's rights were not "scrupulously honored." See *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980); *Michigan* v. *Mosley*, 423 U.S. 96, 104 (1975); *Commonwealth* v. *Gallant*, 381 Mass. 465, 468 (1980). The Commonwealth filed a notice of appeal and a request for a stay. A single justice of this court allowed the Commonwealth's application for interlocutory appeal. For the reasons stated below, we vacate the order of suppression and remand the case to the Superior Court for further proceedings.

We summarize the relevant facts as found by the motion judge.[1] On December 27, 1994, Denise Hubbard, an innocent bystander, was killed in a gang-related shooting on a Springfield street corner. The police obtained a witness statement which inculpated the defendant as the person who drove the actual shooter, allegedly Juan David Rosado, to the scene of the murder. On Friday afternoon, February 17, 1995, police detectives arrested the defendant and Rosado on outstanding warrants for unrelated crimes and brought them to the police station. The detectives learned that the two men could not be arraigned that afternoon because the judge in charge of arraignments at the Springfield District Court already had ended arraignments for the weekend.

At the police station, the police separated Rosado and the defendant. An officer read the defendant the Miranda warnings, and the defendant signed a Miranda waiver form.[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966). The police then questioned the defendant. After a short period of time, the defendant was too upset to speak further and he asked to be taken to a cell. He never requested a lawyer. The officers complied with his request and he was taken downstairs, booked, and placed in a cell.

---

[1]The judge appears to have credited the Commonwealth's testimony and not the defendant's testimony.

[2]Although this form could not be produced, the motion judge credited the police officer's testimony and expressly found that Miranda warnings were read to the defendant, that the defendant signed a waiver, and that the police lost the form.

The booking officer later relayed a message from the defendant that he wanted to speak with one of the detectives. The motion judge found that the defendant then told Detective Dennis O'Connor "that he wanted to talk about his family, what the consequences would be to him of these allegations, and whether he could see members of his family." During the conversation, Detective O'Connor told the defendant that a supervisor's approval was needed to arrange a family visit, and no supervisor was available that night. O'Connor called his supervisor, Lieutenant Thomas Kelly, who was not yet on duty, and told him of the defendant's request. The defendant was allowed to use the telephone, and he called a friend and asked her to obtain an attorney. The defendant made no statements on February 17.

Lieutenant Kelly came on duty the following day, Saturday, February 18, and at around 9 A.M. he spoke with the defendant. The motion judge found that, for thirty to forty-five minutes, the defendant and Kelly "had general conversation wherein Lieutenant Kelly said Detective O'Connor had told Kelly that the defendant was upset and concerned about his family which was in part a continuation of the Torres-O'Connor conversation of [February 17]." Kelly did not readvise the defendant of the Miranda warnings. Kelly asked the defendant if he had any problems, and the defendant told Kelly that he was concerned about when he could see his family, his mother, his girl friend, and his son. In particular, he became emotional about his son and cried. He told Lieutenant Kelly their house was in the middle of a gang area. Lieutenant Kelly told the defendant that he could make a telephone call. Kelly also told the defendant that his family could come down to the station. The defendant was then taken to a telephone. He called a friend and his family.

After making the telephone call, at approximately 9:50 A.M., Lieutenant Kelly told the defendant he wanted to question him about the murder and that the police had a witness's statement implicating the defendant in the street-corner shooting. An officer read the defendant the Miranda warnings. The defendant signed a waiver form at 9:53 A.M. The defendant then gave a lengthy written statement detailing his involve-

ment in the murder.[3] The judge found beyond a reasonable doubt that the defendant gave this confession freely, voluntarily and of his own will, without coercion or duress.[4] The judge also found that the defendant never requested an attorney on February 18. At 6:30 P.M. Detective Kelly again read the defendant the Miranda warnings and the defendant signed a second waiver form. Kelly then took a second written statement from the defendant. The judge found beyond a reasonable doubt that this second statement was also given freely, knowingly and voluntarily, without coercion or duress.

The judge concluded that in the circumstances, the general questions and conversation in the morning "were designed and intended to get the defendant to make an incriminating response." He ruled that that conversation was the "functional equivalent" of interrogation without Miranda warnings. See *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980). He also concluded that the Miranda warnings read to the defendant the day before did not carry over to the morning, when the conversation resumed. The judge ruled that "this was all part of one confinement and detention and new Miranda [warnings] should have been given before any discussions were held with the defendant concerning the shooting." Therefore, the defendant's rights were not "scrupulously honored." The judge allowed the motion to suppress both written statements.[5]

*Discussion.* The judge's findings clearly indicate that in the afternoon or early evening, the defendant invoked his right under the Fifth Amendment to the United States Constitution to remain silent and that the police, at least initially, honored that right by stopping the interrogation. Under *Miranda*, there is no per se rule against the resumption of interrogation after a person in custody has expressed a desire to remain silent. See *Michigan* v. *Mosley*, 423 U.S. 96, 104 (1975). Rather, the admissibility of statements obtained after an invocation of that right depends on whether the person's

[3] The defendant also wrote a note to Rosado, and the police delivered it. The judge found that the note was the defendant's own creation and the police did not tell him what to say.

[4] The judge also made several subsidiary findings supporting his determination of voluntariness.

[5] The second post-Miranda statement was suppressed because the judge found that it referred to and supplemented the first post-Miranda statement.

right to cut off questioning was "scrupulously honored." *Id.* See also *Edwards* v. *Arizona,* 451 U.S. 477, 485 (1981); *Commonwealth* v. *Taylor,* 374 Mass. 426, 432-433 (1978).

The Commonwealth asserts that the defendant's right to cut off questioning was scrupulously honored because the police did not resume the interrogation until after the defendant had received a fresh set of Miranda warnings and validly waived his rights the following morning. See *Mosley, supra* at 106. Contrast *Commonwealth* v. *Gallant,* 381 Mass. 465, 468 (1980); *Commonwealth* v. *Gore,* 20 Mass. App. Ct. 960, 961 (1985).

The Commonwealth challenges the judge's conclusion that the initial pre-Miranda dialogue between the defendant and Lieutenant Kelly on that morning constituted the functional equivalent of interrogation. The motion judge determined that Lieutenant Kelly "intended" the pre-Miranda conversation "to lead up to questions about the murder." The Commonwealth asserts that the dialogue was a conversation about the defendant's family initiated by the defendant.

The Commonwealth contends that, because the defendant himself initiated the discussion about his family with Detective O'Connor on the previous evening and willingly continued that conversation with Lieutenant Kelly the next morning, the Commonwealth did not engage in a conversation which was the functional equivalent of an interrogation.[6]

*The functional equivalent of interrogation.* The procedural safeguards of *Miranda* are required not where a suspect is merely in police custody, but rather where a suspect is subjected to custodial interrogation. *Innis, supra* at 300. Interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself," and therefore Miranda

---

[6]The Commonwealth further argues that the readministration of Miranda warnings was unnecessary because the defendant's initiation of communication with Detective O'Connor on Friday evening constituted an implied waiver of his previously asserted right to remain silent. See, e.g., *Commonwealth* v. *Phinney,* 416 Mass. 364, 371-372 (1993); *Commonwealth* v. *Watkins,* 375 Mass. 472, 484-485 (1978). The judge made no express finding as to who initiated the Friday evening discussion. See *Oregon* v. *Bradshaw,* 462 U.S. 1039, 1045-1046 (1983) (implied waiver inquiry consists of a determination whether suspect's initiation of communication with police "evinced a willingness and desire for a generalized discussion about the investigation" and was a knowing, intelligent, and voluntary waiver of the previously asserted right).

warnings are only required when "a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300-301. The term "functional equivalent" includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. *Arizona* v. *Mauro,* 481 U.S. 520, 526-527 (1987). In this context, an "incriminating response" includes any response, inculpatory or exculpatory, which the prosecution might seek to use against the suspect at trial. *Innis, supra* at 301 n.5.

"The 'functional equivalence' test does not turn on the subjective intent of the particular police officer but on an objective assessment as to whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances." *United States* v. *Taylor,* 985 F.2d 3, 7 (1st Cir.), cert. denied, 508 U.S. 944 (1993). See *Mauro, supra* at 527; *Innis, supra* at 301-302 n.7. The primary focus of the inquiry is on the perceptions of the suspect, and not on the police officer's intent, because the purpose of the Miranda safeguards is to prevent "government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." *Commonwealth* v. *Rubio,* 27 Mass. App. Ct. 506, 512 (1989), quoting *Arizona* v. *Mauro, supra* at 529-530. See also *Innis, supra* at 301 (Miranda safeguards are designed to afford a suspect in custody added protection against coercive police practices).[7]

The motion judge quoted much of the same language setting out the proper standard, but his findings that the dialogue

---

[7]One commentator has suggested that "the best reading of the *Innis* test is that it turns on the *objective* purpose *manifested* by the police. Thus, an officer 'should know' that his speech or conduct will be 'reasonably likely to elicit an incriminating response' when he should realize that the speech or conduct will probably be viewed by the suspect as designed to achieve this purpose. To ensure that the inquiry is entirely *objective*, the proposed test could be framed as follows: if an objective observer (with the same knowledge of the suspect as the police officer) would, on the sole basis of hearing the officer's remarks, infer that the remarks were designed to elicit an incriminating response, then the remarks should constitute 'interrogation' " (emphasis in original). White, Interrogation Without Questions: *Rhode Island* v. *Innis* and *United States* v. *Henry,* 78 Mich. L. Rev. 1209, 1231-1232 (1980). See *Commonwealth* v. *Rubio,* 27 Mass. App. Ct. 506, 512 (1989).

at issue "was intended by Lieutenant Kelly to lead up to questions about the murder" and was "designed and intended to get the defendant to make an incriminating response" were unsupported by the record. Further, the judge's analysis turned on the subjective intent of the police officer rather than on the perceptions of the defendant.

The intent of the police is not entirely irrelevant, particularly where the challenged "police practice *is designed* to elicit an incriminating response from the accused," because it bears on whether the police should have known their words or actions were reasonably likely to have that effect (emphasis added). *Innis, supra* at 301 n.7. *Commonwealth* v. *Brant,* 380 Mass. 876, 883, cert. denied, 449 U.S. 1004 (1980). Yet, "the mere fact that a police officer may be aware that there is a 'possibility' that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation." *Taylor, supra* at 8, citing *Mauro, supra* at 528-529.

The judge made no subsidiary findings to support a conclusion that the conversation was initiated by the Commonwealth in order to obtain a statement, or that Lieutenant Kelly's comments to the defendant were anything other than a response to the defendant's concerns. We conclude that the judge's subsidiary findings are insufficient to support his conclusion, and further proceedings are required.

*Admissibility of the statements.* Even if the defendant was interrogated improperly in violation of *Miranda,* the judge did not address the basis for excluding the statements the defendant made to the police after executing a valid Miranda waiver, particularly where the judge found that the defendant gave these subsequent statements knowingly, voluntarily, and without coercion or duress. See *Martin* v. *Wainwright,* 770 F.2d 918, 927-929 (11th Cir. 1985). See also *Oregon* v. *Elstad,* 470 U.S. 298, 306-307 (1985) ("Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony" [emphasis in original]).

The United States Supreme Court has established that "[i]t is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to under-

mine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Elstad, supra* at 309. This reasoning has been applied to rule admissible a subsequent voluntary statement given after a valid Miranda waiver. See *Martin, supra* at 928-929 (subsequent voluntary statement admissible even where the police initially violated *Miranda* by failing to scrupulously honor a suspect's right to cut off questioning).

The Commonwealth argues that the defendant's statements, voluntarily given after a valid Miranda waiver, are admissible under the principles enunciated in *Commonwealth* v. *Haas,* 373 Mass. 545, 554 (1977), and *Commonwealth* v. *Smith,* 412 Mass. 823, 829-830 (1992). See *Commonwealth* v. *Prater,* 420 Mass. 569, 579-581 (1995). This line of analysis reflects Federal case law, but we have narrowed the application of *Oregon* v. *Elstad, supra,* by accepting a rule that a statement taken in violation of *Miranda* presumptively taints any subsequent confession. *Smith, supra* at 836. We "presume that a statement made following the violation of a suspect's Miranda rights is tainted, and . . . require[s] the prosecution [to] show more than the belated administration of Miranda warnings in order to dispel that taint." *Id.* ("The failure to administer the Miranda warnings as presently required by Federal law is itself an improper police tactic, and any confession obtained in the absence of proper Miranda warnings is by definition coerced — regardless of how friendly the actual interrogation" [internal quotations omitted]. *Id.*).

"This presumption may be overcome by showing that either: (1) after the illegally obtained statement, there was a break in the stream of events that sufficiently insulated the post-Miranda statement from the tainted one; or (2) the illegally obtained statement did not incriminate the defendant, or, as it is more colloquially put, the cat was not out of the bag." *Prater, supra* at 580. "The focus and ultimate goal of undertaking either or both lines of analysis is a determination of the voluntariness of the later confession." *Id.* at 581. "[W]hether one or both lines of analysis is required before a

confession is admitted turns on the facts of the case."[8] *Id.* at
580-581 n.10. The motion judge found that, before the read-
ministration of Miranda warnings, the defendant made the
statement that his family's house was in the middle of a gang
area. Contrast *Innis, supra* at 301 n.5. On remand, the judge
must determine whether the defendant made other statements
during the pre-Miranda conversation which support his
conclusion that the post-Miranda statements must be sup-
pressed.

*Improper promises of leniency.* The defendant argued below
that his confessions were invalid because the police made
improper promises of leniency to induce him to confess. See
*Commonwealth* v. *Meehan,* 377 Mass. 552, 564, cert. denied,
444 U.S. 824 (1979). See also *Commonwealth* v. *Carey,* 407
Mass. 528, 538 (1990); *Commonwealth* v. *Mandile,* 397 Mass.
410, 414-415 (1986). The defendant urges us to conclude his
confession was involuntary because of police promises of le-
niency.

The judge determined that the defendant's statements were
given knowingly, voluntarily, and without coercion or duress.
The judge made no factual finding specifically addressing the
defendant's contention of police promises of leniency. Without
factual findings by the judge, appellate review is not appropri-
ate. See *Jackson* v. *Denno,* 378 U.S. 368, 391 (1964) (appel-
late review "inadequate substitute for a full and reliable de-
termination of the voluntariness issue in the trial court . . .
including the resolution of disputed facts upon which the vol-
untariness issue must depend"). We therefore do not reach
this issue.

---

[8]As we stated in *Commonwealth* v. *Smith,* 412 Mass. 823, 833 n.9 (1992),
"[i]n circumstances where a suspect is subjected to a continuous custodial
interrogation (i.e., there is no break in the stream of events) but does not
respond with an incriminating response until after the Miranda warnings
have been given (i.e., the cat is not out of the bag), it may be argued that
no Fifth Amendment violation has occurred. The exclusionary rule, when
utilized to protect Fifth Amendment rights, is directed solely toward police
misconduct that produces incriminating testimony as its fruit . . . .
However, because interrogation without benefit of the Miranda warnings is
itself improper police conduct, the absence of a break in the stream of
events, in some circumstances, may mandate the suppression of a post-
Miranda statement, even where the suspect made no incriminating state-
ment during the course of the illegal interrogation."

The order of suppression is vacated, and the case remanded to the Superior Court for further proceedings.[9]

*So ordered.*

---

[9]The Springfield District Court has a standing policy whereby the arraignment session judge may determine a certain time after which there are no more court arraignments. Because February 17 was the beginning of a three-day holiday weekend, the defendant was not arraigned until Tuesday, February 21. The defendant claimed the delay in arraignment violated his right to prompt arraignment. The motion judge expressly concluded that the delay was reasonable and not attributable to police misconduct. The single justice denied the defendant's cross application for leave to appeal.