Macdonald, D. Lloyd, J.
The defendant was indicted for the murder on July 7, 2008 of Andrew Colwell in Mansfield. At the time the victim was 18; the defendant was 19. The defendant is alleged to have shot Colwell in the midst of a drug transaction.
Based on leads that implicated the defendant as a prime suspect, on July 8th (the day after the homicide) the defendant was arrested at the South Station bus terminal in Boston as he was about to take a bus to Kentucky. He was brought to the Mansfield police station and interrogated by Mansfield Detective Francis Archer (“Archer”) and Massachusetts State Police Detective Chad Laliberte (“Laliberte”). The defendant was advised of his Miranda rights and executed a written waiver. Exhibit 1. The interview lasted approximately an hour and fifty minutes. It was videotaped. Exhibit 2.
It is fair to characterize the entire content of the interview as incriminating, but it is only the last part of it that is the subject of the instant motion. Specifically, the defendant asserts that at approximately 1 hour and 43 minutes into the interview, he withdrew his waiver by exercising his right to counsel and informing the officers that he wanted a lawyer present before the interview proceeded further. He moves that the statements he made thereafter be suppressed. The Commonwealth submits that the defendant’s request for counsel at 1:43 of the interview was ambiguous and thus did not serve to retract his prior waiver.
The defendant’s motion is ALLOWED for the reasons that follow.
Pertinent Principles
[I]n accordance with Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), once an accused invokes the right to counsel [after having initially waived his Miranda rights], he cannot be “subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police!.]” . . . “Invocation of the Miranda right to counsel ‘requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.’. . . But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning” (emphasis in original). Commonwealth v. Judge, 420 Mass. 433, 450 (1995), quoting Davis v. United States, 512 U.S. 452, 459 (1994).
Commonwealth v. Girouard, 436 Mass. 657, 666 (2002).
“The settled approach to questions of waiver requires that the court give a broad rather than a narrow interpretation to a defendant’s request for counsel. Interpretation is required only where the defendant’s words, understood as ordinary people would understand them, are ambiguous.” Joseph Grasso and Christine McAvoy, Suppression Matters Under Massachusetts Law §18-5[b][2] (2008), citing Connecticut v. Barrett, 479 U.S. 523, 529 (1987).
[T]he principle [is] that statements protected by the Miranda warnings are those that are the product of being both in custody and subjected to interrogation. Commonwealth v. Torres, 424 Mass. 792, 796, 678 N.E.2d 847 (1997). “The procedural safeguards of Miranda are required not where a suspect is merely in police custody, but rather where a suspect is subjected to custodial interrogation. [Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).] Interrogation ‘must reflect a measure of compulsion above and beyond that inherent in custody itself,’ and therefore Miranda warnings are only required when ‘a person in custody is subjected to either express questioning or its functional equivalent.’ Id. at 300-01. The term ‘functional equivalent’ includes ‘any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.’ Id. at 301. Arizona v. Mauro, 481 U.S. 520, 526-27 (1987) . . . The ’’functional equivalence" test does not turn on the subjective intent of the particular police officer but on an objective assessment as to whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances.’ United States v. Taylor, 985 F.2d 3, 7 (1st Cir.), cert. denied, 508 U.S. 944 (1993)." Commonwealth v. Torres, supra at 796-97.
Commonwealth v. Clark, 432 Mass. 1, 16 n. 9 (2000).
In this context it is worthwhile to return to the seminal text of Miranda itself:
As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered *346 some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.
Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).
Where a person in custody has indicated a desire to consult an attorney after initially having waived the right, “the burden is on the prosecution to show beyond a reasonable doubt that subsequent events indicate a voluntary, knowing and intelligent waiver of the right to have counsel present (and the right to remain silent if invoked), before police may recommence interrogation in such circumstances.” Grasso and McAvoy, supra, at §18-5[b][3], citing Commonwealth v. Rankins, 429 Mass. 470, 473 (1999).
Discussion
Numbered item 5 on the waiver form that was signed by the defendant before the interview began read, “If you decide to answer questions now without an attorney present, you will still have the right to stop the questioning at any time.” Exhibit 1. The form accurately apprised the defendant of his right in that regard, and the defendant’s initial waiver was voluntarily, knowingly and intelligently exercised. The issue before the Court is whether his right was violated by the officers later continuing their interrogation after the defendant manifested a desire to have an attorney present.
As noted, the overall interview lasted approximately an hour and fifty minutes. The first hour was low pressured. Laliberte and Archer essentially allowed the defendant to talk and describe what he had allegedly been doing the day and night before, at or about the time that Colwell’s killing occurred. In substance, the defendant told (and retold) a story that he had been with his girlfriend up until about 10 p.m. at a party in a Middleboro motel room and that he had remained there the rest of the night. Asked about his cellphone and whether he used it, the defendant repeatedly claimed that it was broken and that he had not used it. The defendant’s demeanor was composed; he was responsive to the officers’ questions, and he appeared to be cognitively and emotionally intact.
After about an hour, the officers became more confrontational. Archer took the lead in the interrogation at that juncture. He informed the defendant that they had talked to his girlfriend and that she directly contradicted the defendant’s stoiy: She had not been with him the day before, he had not picked her up and there had not been a party. Archer told him: “Here’s the deal. You know where I’m coming from. I don’t care about anything except the truth. You’re a likeable kid. I know your father. This is your opportunity to get out in front of everything and level. TTiis is it.”
The defendant proceeded then to change his story. In the course of doing so, however, he remained composed. His statements were knowing, voluntary and intelligent, and there was no material change that affected his Miranda waiver. For the first time, he described having been involved in a drug deal. He was there to purchase marijuana. He described that he was in a car (the victim was the driver) when the person in the passenger seat pulled out a handgun and pointed it at him. The defendant claimed that he then tried to push the gun away. In the course of thus trying to defend himself, the defendant said the gun went off. The victim Colwell, whom the defendant claimed not to have known before, was struck. The defendant said that he was scared, that he ran away and that he threw the money he had brought to buy the drugs away in the woods.
Pressed by the officers, who said that they had information that several months before he had described to someone that he had acquired a gun, the defendant adamantly and repeatedly denied it.
Archer left the interview room for a few minutes. Upon his return, he resumed the lead in the interrogation, and the pitch of his voice became louder and more assertive. However, he did not bully the defendant. At 1 hour, 42 minutes into the interview, Archer informed the defendant that, contrary to the defendant’s repeated statements that he didn’t have his cell phone the prior night, they “have your cell phone bouncing off towers all night long.” Archer then said, “Cut the shit, man. Get in front of it.” Archer then loudly recited a scenario to the defendant: “You’re sitting behind the kid. The deal’s going bad. You’re scared because you’re going [in the car] behind a building. You think you’re going to get ripped off. You’re tired of getting ripped off, so you take the gun out and put it to his head. You didn’t think it was going to go off. You didn’t mean it to go off. I believe that.”
The defendant then said in a low voice, “Okay, I’m just going to tell you the truth.” Archer loudly responded: “Tell me the truth, dude. That’s all I want.” Then the defendant said, “This is what happened. Honestly. Both of you just look at my eyes.”
Almost immediately, though, the defendant appeared to have a change of heart. He stated: “Actually, I believe that I should have a lawyer present before I say this.”
Archer (in a straight-forward and low volume tone) responded: “Are you asking for a lawyer?”
The defendant: “Yes. It seems that I’m the culprit. Seems like I need a lawyer.”
A pause then occurred. Archer leaned back from the table and appeared to be collecting his papers. Then Laliberte asked rhetorically, “It seems that you’re the culprit?” and then immediately added: “All we want is the truth. I told you [referring to an earlier statement that the defendant’s talking to them was his “window of opportunity" to help himself] that window of opportunity ..." Without saying more, Laliberte gestured *347 with his hands a window closing, and Laliberte whistled as his hands came together. Without missing a beat, i.e., in apparent direct response to what Laliberte had just said and gestured, the defendant stated: “This is the real truth,” and he went on to decisively incriminate himself. It is those statements that are the subject of the motion.
With the defendant having earlier informed the officers, “I believe that I should have a lawyer present” and then responding to Archer’s direct question as to whether he wanted a lawyer, by straight-forwardly saying, “Yes,” it was the constitutional obligation of the officers to suspend their questioning at that juncture.
However, the Commonwealth submits that the larger exchange was ambiguous and that Laliberte’s final statement to the defendant, “All we want is the truth” was not a continuation of the interrogation. In effect, the Commonwealth has two theories: First, that the defendant did not unambiguously ask for a lawyer; second, even if he did, that the defendant’s response to Laliberte was a spontaneous extension of his earlier statements made pursuant to a valid waiver and not in response to interrogation.
The fundamental problem for the Commonwealth is that the word, “Yes,” in answer to a direct and unconditional question is not ambiguous. The defendant’s adding the observation, “It seems that I’m the culprit,” did not inject an ambiguity. The defendant’s statement in that regard was in response to Archer’s having just graphically drawn a scenario in which the defendant was, in fact, the central culprit. Under these circumstances, Laliberte saying, “All we want is the truth” was simply a statement that they then wanted the defendant to admit to “the truth” of what Archer had just stated.
As such, what the officers did was to persist in interrogating the defendant notwithstanding the fact that the defendant had exercised his “right to stop the questioning at any time” pursuant to paragraph 5 of the executed waiver form. Exhibit 1. It was improper to continue the questioning without providing the defendant access to an attorney. Alternatively, upon the defendant having indicated — as he did — an apparent desire to talk further, the officers could have taken the defendant through the Miranda waiver process again. Commonwealth v. Rankins, 429 Mass. at 473. However, the officers did not do so.
The Court accepts Laliberte’s good faith in pressing the defendant as to his request for a lawyer and Laliberte’s good faith in believing that a reference to “the truth” as his and Archer’s object did not comprise “interrogation.” However, the test is not a subjective one. Rather, the test is an objective one. The test is “whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances.” Commonwealth v. Clark, supra at 16 n.9. And, in context, Laliberte’s request of the defendant for “the truth” after the defendant had requested a lawyer be present was the “functional equivalent” of an assertion that the defendant admit his guilt to having murdered Colwell. Id.
ORDER
The defendant’s motion to suppress is ALLOWED.
D. Lloyd Macdonald
Justice of the Superior Court
March 30, 2009