NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11610

COMMONWEALTH  vs.  DENNIS COLON.


Essex.     February 8, 2019. - October 22, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, & Kafker, JJ.


Homicide.  Constitutional Law, Admissions and confessions, Voluntariness of statement, Assistance of counsel. Evidence, Admissions and confessions, Voluntariness of statement.  Practice, Criminal, Assistance of counsel, Admissions and confessions, Voluntariness of statement, Instructions to jury, Capital case.



Indictments found and returned in the Superior Court Department on May 27, 2010.

The cases were tried before Richard E. Welch, III, J., and a motion for a new trial, filed on October 24, 2014, was heard by him.


James W. Rosseel for the defendant.
Catherine Langevin Semel, Assistant District Attorney, for the Commonwealth.


GAZIANO, J.  In June 2012, a Superior Court jury convicted the defendant of murder in the first degree on a theory of felony-murder in connection with the May 2009 shooting death of

Juan Caba (victim).[1]  The defendant's motion for a new trial was denied after an evidentiary hearing.  The matter is before this court on the defendant's direct appeal, consolidated with his appeal from the denial of his motion for a new trial.

The defendant argues that a new trial is necessary because of the ineffective assistance of his trial counsel.  He contends that counsel failed to make use of evidence that the defendant had engaged in a telephone conversation with his girlfriend, while in police custody and using a police officer's cellular telephone, to argue that the defendant's statements to police the following morning were not voluntarily made.  Relatedly, the defendant also contends that counsel erred in not using recordings of the defendant's custodial interviews on the evening of his arrest in challenging the voluntariness of the inculpatory statements he made the following morning.  In addition, the defendant argues that trial counsel provided ineffective assistance because he did not properly request a DiGiambattista instruction.  See Commonwealth v. DiGiambattista, 442 Mass. 423, 447-448 (2004).  The defendant argues that the combination of errors likely influenced the jury's decision, and

_____

[1] The defendant also was convicted of armed burglary, which was placed on file at sentencing, and assault and battery by means of a dangerous weapon on the victim's girlfriend, who was shot and injured during the same attack.

that, accordingly, a new trial is required.  He also seeks relief under G. L. c. 278, § 33E.

For the reasons that follow, we affirm the defendant's convictions and the denial of his motion for a new trial, and we decline to grant relief under G. L. c. 278, § 33E.

1.  Background.[2]  a.  The shooting.  At approximately 4:30 A.M. on May 22, 2009, intruders broke into the victim's house while the victim and his girlfriend, Tori,[3] were asleep. Tori awoke to find the victim sitting up in bed and two men standing at the edge of the bed, pointing guns at her and the victim.  The men wore sunglasses and hats that obscured their faces.  Although Tori did not recognize either man, she thought that one of them might have been a man she knew as "PS," to whom the victim twice had sold marijuana.  Tori believed the other man was approximately five feet, six inches tall, roughly the same height as the defendant.

Tori screamed, "Please, don't shoot, don't shoot."  The victim could not see what was happening, as he was blind, and

---

[2] The facts in this and the following sections are derived from a combination of (1) trial testimony; (2) the trial judge's voir dire of the defendant's girlfriend, before the jury were sworn, in relation to motions to exclude her testimony; (3) an evidentiary hearing held in conjunction with the defendant's motion for a new trial; and (4) undisputed documents in the record.

[3] A pseudonym.

began waving his hands.  A gun went off, and the victim fell on top of Tori.  The men left.  Tori testified that she saw the two men for a total of approximately five minutes.

A projectile from a .380 semiautomatic weapon had entered the victim's head on the left side and fragmented in at least two different directions.  The victim was transported to a hospital, where he was pronounced dead at 11:25 P.M.  The cause of death was a single gunshot wound to the head.  A portion of the bullet passed through the victim's head and into Tori's chin, breaking her jaw.  Two permanent metal plates had to be installed in Tori's jaw to hold the jaw together.

b.  Interrogations.  On June 22, 2009, while Lawrence police were investigating a separate incident involving a burglary, they encountered the defendant and found a Beretta firearm on his person.[4]  The defendant was arrested for possession of a firearm without a license, and was transported to the Lawrence police station.

That evening, the defendant was interrogated at the Lawrence police station in two separate interviews that took place approximately one hour apart.  He said nothing inculpatory related to this offense during these two interviews, and no

---

[4] The caliber of the Beretta is not clear from the record.

testimony was introduced at trial concerning the defendant's statements on the evening of his arrest.

During the first interview, the defendant asked detectives if he "could see" his girlfriend, Giana.[5]  At that point, Giana was at the police station in a different room.  Giana, who was four months pregnant with twins, had come to the police station voluntarily to provide police information that she thought would help the defendant, concerning the gun that police had found on his person.  In response to the defendant's request, one detective said, "[A]ctually she's not going to be able to come down.  All right?  But I'll let you call her.  All right?"

According to a police report, while the defendant was in the booking room after his first interview, a detective asked a fellow officer to tell Giana, who was upstairs, to call the officer's cellular telephone.  When Giana called, the officer handed the telephone to the defendant, who spoke with Giana. Subsequently, the defendant spoke with police for ten minutes, and the interview then concluded at 5:41 P.M.

The following day, on June 23, 2009, while the defendant was being held in a cell at the Lawrence Division of the District Court Department, he requested to speak with a police officer whom he recognized.  At approximately 9:30 A.M., the

---

[5] A pseudonym.

defendant was interviewed by two officers. According to police testimony, the defendant waived his Miranda rights, consented to the interview being recorded, and waived his right to prompt arraignment. The defendant signed forms associated with each of these waivers, as well as his consent to the recording. The period during the issuance of the Miranda warnings and the receipt of the defendant's waivers, however, was not recorded.

In this interview, the defendant told police that he had participated in the break-in that led to the victim's death. The defendant admitted to having broken into the victim's apartment, along with individuals he identified as "Limbe," "Smokey," "PS," and "Dezi," with the intent to steal money and marijuana. The defendant said that he saw a dog in the apartment;[6] as he was afraid of dogs, he stayed in the hallway to serve as the lookout. He concluded by saying that someone other than he had fired a shot inside the apartment from a .380 weapon.

---

[6] The victim and his girlfriend owned a dog, which was in the bedroom at the time of the incident.

In January 2011, the defendant's first attorney[7] moved to suppress the defendant's inculpatory statement to police.[8]  The motion was denied after an evidentiary hearing.  In his written findings of fact and rulings of law, the motion judge determined that the defendant had been questioned by police at the Lawrence police headquarters on June 22, 2009, shortly after his arrest, for approximately thirty to forty-five minutes.  The judge found that, the following day, the defendant initiated contact with police, while being held in the cell block area of the District Court in Lawrence.  An officer read the defendant Miranda warnings before turning on a tape recorder.  The defendant was "eager" to speak with police.  The officer described him as "clear-headed, and not under the influence of alcohol, drugs, or mental illness."  The judge determined that the emotion the defendant displayed was "appropriate to the situation," and

---

[7] Prior to trial, the defendant's first counsel was replaced by a second counsel, who represented the defendant throughout the trial.

[8] The motion to suppress asserted, among other grounds, that the defendant did not knowingly, intelligently, and voluntarily waive his right to remain silent or to have an attorney present during questioning on June 23, 2009; the defendant did not make any statement voluntarily; and any consent was not voluntarily obtained.  The motion did not explicitly reference the defendant's concern for his girlfriend.

concluded that the defendant's "statements were voluntary and preceded by adequate Miranda warnings."[9]

The defendant's trial counsel filed a motion for reconsideration, which was denied. After trial began about one week later, counsel moved in limine to exclude the defendant's statement of June 23, 2009. The trial judge deferred to the motion judge's ruling and denied the motion.

c. Trial. Before the jury were sworn, trial counsel moved to exclude testimony by the defendant's girlfriend, Giana, with respect to statements she made at the Lawrence police station on June 22, 2009. The Commonwealth had intended to call Giana as a corroborating witness, and possibly as a witness to show intent for the underlying felony. Defense counsel explained that Giana sought to claim a privilege under the Fifth Amendment to the United States Constitution, because information that she gave police that inculpated the defendant purportedly was false. Counsel also moved to exclude Giana's statements on the ground of asserted police coercion.

The judge conducted a voir dire of Giana. Giana said that, while she was being questioned, a police officer threatened her

---

[9] The judge observed, "The failure to record the beginning of questioning is an issue for the trial judge, and does not provoke any concerns by this court about the voluntariness of the statements or the adequacy of the Miranda warnings, given [the defendant's] obvious desire to speak to police as shown by the audio recording."

by telling her that if she did not inculpate the defendant, she would go to prison and give birth there, and that she would never see her twins again. Giana's son, who had come to the police station separately, was brought into a room where he met briefly with his mother, who was crying.

The judge determined that "the police may have played upon [Giana's] emotions -- to a certain extent -- but I do not find that all of [Giana's] testimony is credible." The judge explained that Giana had provided a "demonstratively false" statement that she had been given Miranda warnings only as she was walking out the door. The judge also noted that the police report describing Giana's interview "doesn't even go into a fair amount of what she claims was asked her at the police station." The judge denied the motion to exclude Giana's statements. He observed that, "plainly, the defense is entitled to bring these matters up to the jury," and left "it to the Commonwealth as to whether they want to open up this can of worms before the jury."[10] Neither the Commonwealth nor the defense ultimately

---

[10] Overall, the judge did "not find that the Lawrence [p]olice had been sufficiently shown to have so invaded [Giana's] personal security or in a way that would likely produce false testimony." The judge's findings on this point, however, are not entirely clear. The previous day, the judge had ruled that if Giana testified at trial that she had relayed false statements to the police, she would have no need to invoke the Fifth Amendment because "her testimony . . . would indicate that she did not willfully provide the false information, if

called Giana to testify at trial. As a result, any information inculpatory to the defendant that Giana might have provided to police was not presented to the jury.

The defendant's statements from the morning of June 23, 2009, were the heart of the Commonwealth's case. In addition, the Commonwealth presented testimony of an inmate, Alvin Rivera, who testified against the defendant pursuant to a cooperation agreement. Rivera's testimony suggested that the defendant actually shot the victim, rather than serving as lookout.

Rivera testified that, while detained at the Middleton house of correction in the summer of 2009, the defendant told him that the defendant and others, known as "Smokey," "Limbe," and "PS," went to the victim's house on the night of the shooting in search of marijuana and money. Rivera testified that Smokey handed the defendant a .380 weapon and PS a Beretta. According to Rivera, the defendant told him that Smokey stood in the hallway as lookout while the defendant and PS went into the apartment and made their way to the bedroom where the victim and Tori were sleeping. Rivera testified that, when the defendant noticed the victim moving, the defendant got "nervous" and fired a single shot before running from the apartment. The defendant told Rivera that he had sold the .380 but not the Beretta. The

---

indeed, it was false. If it is false, it was done due to intimidation, coercion, not willful activity on her part."

defendant said that if anyone questioned him about the shooting, he would say that he had been the person who stood outside as a lookout. The defendant told Rivera that the defendant and three other individuals previously had broken into the victim's apartment, and had stolen marijuana.

The defendant was convicted of all charges. Because the felony-murder conviction was predicated on the burglary charge, that charge was placed on file. The defendant's timely appeal was entered in this court in January 2014.

d. Motion for new trial. Approximately ten months later, the defendant filed a motion for a new trial, and his appeal in this court was stayed. In his motion, the defendant argued that he had received ineffective assistance of counsel as a result of both of his attorneys' failure adequately to investigate Giana's purported role in, and effect on, the police interrogation and the defendant's statements to police, as well as both attorneys' failure to mention the defendant's concern for Giana in challenging the voluntariness of the defendant's waivers of his Miranda rights and subsequent statements to police. The defendant also argued that his counsel had been ineffective because counsel did not request a DiGiambattista instruction on the ground that the beginning of the defendant's June 23, 2009 interrogation had not been recorded, including the portion where

the defendant assertedly was given Miranda warnings and waived his Miranda rights.[11]  See DiGiambattista, 442 Mass. at 447.

The defendant argued that, during his interrogation on the night of his arrest, police officers orchestrated a "cell[ular] [tele]phone ruse" in which they instructed Giana to call him using a detective's cellular telephone.  The defendant asserted that he was "surprised" to hear Giana on the telephone.  He said that, during this call, Giana told him about police threats to take away her children and charge her with murder.  Because of this call, the defendant maintained, he told the officers whatever he thought they wanted to hear.

The trial judge conducted a three-day evidentiary hearing on the motion for a new trial.  Witnesses included the defendant's two prior attorneys; five police officers; the defendant; his girlfriend, Giana; and one of her sons.

Ultimately, the judge denied the motion.  The judge found that numerous "facts alleged by the defendant never occurred." Specifically, the judge did "not credit, in the slightest, the defendant's assertion that the Lawrence police created a 'cell

---

[11] The defendant argued, additionally, that trial counsel was ineffective because he failed adequately to investigate whether the defendant knowingly waived his right to prompt arraignment before his interview the morning after his arrest; to seek suppression of an identification made using a photographic array; and to object to that witness's in-court identification of the defendant on the basis of the prior identification.

phone ruse'" on June 22, 2009. The judge found that "[w]hile there is no doubt that the defendant spoke briefly with [Giana] before he made his June 23rd statement to the police, that phone call conversation was brief and did not contain the sort of detailed description of police threats or coercion that the defendant now claims." Accordingly, the judge concluded that "there was no basis to argue the phone call as one of the grounds for lack of voluntariness," and "[t]hus . . . no ineffective assistance of counsel." The judge also determined that absence of a request for a DiGiambattista instruction based on the nonrecording of initial warnings and waivers "might well be considered an oversight," but that such oversight "did not deprive the defendant of a substantial basis for a defense."

2. Discussion. a. Standard of review. "Where, as here, an appeal from the denial of a defendant's motion for a new trial has been consolidated with a direct appeal from a conviction of murder in the first degree, we review both under G. L. c. 278, § 33E." Commonwealth v. Moore, 480 Mass. 799, 805 (2018). "[W]e examine the denial of a motion for a new trial to determine whether there was error, and, if so, whether the error created a substantial likelihood of a miscarriage of justice." Commonwealth v. Ferreira, 481 Mass. 641, 649 (2019), citing Commonwealth v. Vargas, 475 Mass. 338, 355 (2016), and "afford particular deference to factual determinations made by a motion

judge who was also the trial judge." Ferreira, supra. "[W]e make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found.'" Commonwealth v. Haas, 373 Mass. 545, 550 (1977), S.C., 398 Mass. 806 (1986), quoting Brewer v. Williams, 430 U.S. 387, 403 (1977).

b. Telephone call and interviews on evening of defendant's arrest. Although both initial and successor counsel had access to the recordings of the interviews on June 22, 2009, the evening of the defendant's arrest, as well as to information concerning the existence of the telephone call that took place between the defendant and Giana while the defendant was in the booking area, neither attorney relied on the recordings of the interviews or the existence of the telephone call in their motions to suppress the statements the defendant made the following morning.[12] Trial counsel did not realize that pretrial counsel had given him recordings of the June 22, 2009 interviews, which had been obtained through discovery; accordingly, he did not listen to the recordings. The nonreliance on the call or recordings by each of the defendant's

_____

[12] As appellate counsel acknowledges, the defendant's initial and successor counsel received copies of a police report, dated June 22, 2009, before trial. The report explained that the call had taken place.

trial counsel was not a conscious, strategic, or tactical decision.

Before this court, the defendant presses his argument that he received ineffective assistance because counsel did not rely on the recordings of his statements to police on the night of his arrest, or the telephone call between the defendant and his girlfriend, in challenging the voluntariness of the defendant's statements to police the following day.

In reviewing claims of ineffective assistance of counsel under G. L. c. 278, § 33E, "[w]e focus more broadly on whether there was error and, if so, whether any such error 'was likely to have influenced the jury's conclusion.'" Commonwealth v. Fulgiam, 477 Mass. 20, 29, cert. denied, 138 S. Ct. 330 (2017), quoting Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014). Where a motion for a new trial is premised on a claim of ineffective assistance of counsel, "the burden of proving ineffectiveness rests with the defendant" (citation omitted). Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015), S.C., 478 Mass. 189 (2017).

A defendant's statements are admissible against him at trial only if they were made voluntarily. See Commonwealth v. Magee, 423 Mass. 381, 387 (1996) ("Due process requires a separate inquiry into the voluntariness of the statement . . ."). To establish voluntariness, the Commonwealth must

prove beyond a reasonable doubt that "'in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was [not] overborne,' but rather that the statement was 'the result of a free and voluntary act.'" Commonwealth v. Baye, 462 Mass. 246, 256 (2012), quoting Commonwealth v. Durand, 457 Mass. 574, 595-596 (2010), S.C., 475 Mass. 657 (2016), cert. denied, 138 S. Ct. 259 (2017). The Commonwealth also must establish beyond a reasonable doubt that police interrogation practices "were not 'so manipulative . . . that they deprived [the defendant] of his ability to make an unconstrained, autonomous decision to confess.'" Baye, supra, quoting United States v. Walton, 10 F.3d 1024, 1030 (3d Cir. 1993). "Absent some indication that the defendant was particularly vulnerable to suggestion, the focus of our inquiry has been on whether incriminating statements were 'the result of coercion or intimidation." Baye, supra, quoting Durand, supra at 595.

Clearly, it was poor performance for the defendant's initial and successor counsel not to listen to the recordings of interrogations of his client by police, which each counsel had in his possession as part of mandated discovery. Our review of these recordings, and the judge's findings about the call, however, lead us to conclude that they were not likely to have made a difference in counsels' efforts to suppress the

defendant's confession on the following day.  See Kolenovic, 471 Mass. at 672-673, quoting Commonwealth v. Walker, 443 Mass. 213, 224 (2005) ("[A] judge's findings of fact after an evidentiary hearing on a motion for a new trial will be accepted if supported by the record. . . .  Where, as here, the motion judge is also the trial judge, we give 'special deference' to the judge's findings of fact . . .").[13]

First, the trial judge, who conducted the hearing on the motion for a new trial, was warranted in finding that the telephone call between the defendant and Giana was not the product of a police-orchestrated ruse.  Transcripts of the defendant's interrogation on the night of his arrest support the judge's determination that the defendant could not have been "surprised" to find Giana speaking to him on the telephone, as the defendant contended.  The transcript of the interview states

---

[13] Contrary to his suggestion, the defendant is not entitled to de novo review of all the evidence to determine if it supports his claim that his statement on June 23, 2009, was involuntary.  While the defendant is correct that this court may review documentary evidence, including transcripts, independently, see Commonwealth v. Novo, 442 Mass. 262, 266 (2004), determinations of witness credibility were central to the resolution of the defendant's claims of ineffective assistance in his motion for a new trial.  See Commonwealth v. Mosher, 455 Mass. 811, 818 (2010), citing Commonwealth v. Sparks, 433 Mass. 654, 656 (2001) ("We accept as true the subsidiary findings of fact made by the motion judge absent clear error, deferring to the credibility findings of the judge, who had the opportunity to observe and evaluate the witnesses as they testified").

clearly that the defendant requested to see Giana; subsequently, a police officer told the defendant that the officer would allow them to speak over the telephone.  It was, accordingly, not inaccurate for the judge to characterize the call as the result of the officers' allowance of the defendant's request to speak with Giana.

Second, the judge was not unwarranted in finding that neither Giana nor the defendant provided the defendant's initial or successor counsel with any indication that Giana had communicated police threats to the defendant during their telephone call.  This finding was based on the fact that both counsel several times had attempted to have suppressed the defendant's inculpatory statements, and testimony by both counsel, which the judge credited.  The defendant's first counsel testified, "If there was something that impacted [the defendant's] voluntariness that he had revealed to me, . . . I would have hoped I would have included it in the affidavit [as] a ground for the suppression."  Successor counsel testified that he interviewed Giana in his efforts to obtain suppression of the defendant's confession, and that "[i]f [information about police threats was] not in [his] motion [to suppress], then it wasn't discussed."

Based on this, the judge drew a permissible inference that the reason that the defendant did not disclose to counsel any

knowledge of alleged police pressure placed on Giana was that she did not communicate police threats to the defendant during their telephone call.  Because the call itself was not recorded, the judge's factual determinations concerning the call rested largely on assessments of witness credibility.  The judge found portions of the defendant's and Giana's testimony with respect to the contents of the call not credible, and explained his reasoning.  Cf. Commonwealth v. Rakes, 478 Mass. 22, 36 (2017).

The judge noted that Giana provided "plainly false" testimony at the motion hearing, in that she asserted that she had spoken about the call "out loud in a court setting just like this."  This statement is refuted by the transcript of her prior voir dire testimony before the same judge.  In addition, as was his prerogative, see Rakes, 478 Mass. at 36, the judge did not credit Giana's testimony that she told the defendant's trial counsel about the call "the moment [they] spoke."  This determination is particularly apt in light of the testimony by trial counsel indicating that he had no memory of such statements, and that he would have relied on them in support of motions to suppress if he had heard such assertions at the time.

The judge also was not required to credit the defendant's testimony that his telephone conversation with Giana included discussion of specific police threats toward her.  See Rakes, 478 Mass. at 36.  Like Giana, the defendant provided

contradictory information relative to his interactions with the police on the evening of his arrest and the following day. For instance, in a written affidavit in support of his motion to suppress his June 23, 2009 statement, the defendant attested, "Prior to being arrested I had taken some [K]lonopin tablets. . . . I was under the influence of the pills when the police interrogated me." At the hearing on his motion for a new trial, the defendant testified that he had not been under the influence of drugs during any of his interviews with police, and that the affidavit he signed under the penalty of perjury was "not true."

The judge's determination that "[t]he conversation, as was true of most phone conversations of a similar sort in the booking area, did not last [ten] to [fifteen] minutes as the defendant alleges," and instead was "quite a brief conversation" is supported by the record. As the judge noted, Giana testified at the hearing that the telephone conversation lasted only "[a] few seconds, a few minutes." The judge observed that the defendant gave contradictory estimates concerning the length of the call; while the defendant's affidavit in support of his motion for a new trial stated that the call lasted ten to fifteen minutes, the defendant testified at the hearing that the call lasted "six or seven minutes or a little bit -- a little bit longer, a little bit." In addition, the police officer who had been in the room during the telephone call testified that

the call must have been short, because he would not have allowed the defendant to talk on the cellular telephone for ten minutes. The judge was warranted in concluding that, "if the defendant was unaware of the alleged inappropriate police pressure, it could not have affected his voluntariness."

Undoubtedly, if made to a defendant, "threats concerning a person's loved one . . . may impinge on the voluntariness of a defendant's confession." Commonwealth v. Monroe, 472 Mass. 461, 469 (2015), citing Lynumn v. Illinois, 372 U.S. 528, 534 (1963). Police threats directed at an individual other than the defendant, however, and which are not communicated to the defendant, cannot reasonably be said to constitute coercion of the defendant. Compare Monroe, supra ("Here, . . . detectives threatened the defendant with the loss of contact with his child by repeatedly and falsely claiming that if he did not tell them what happened, the child could be taken away and raised by strangers").

After reviewing the record and the judge's conclusions, we are not "left with the firm conviction that a mistake has been committed." Commonwealth v. Tavares, 385 Mass. 140, 156, cert. denied, 457 U.S. 1137 (1982), quoting New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977).

The defendant argues, in the alternative, that "[e]ven if the call did not include mention of the [alleged] coercion, the

circumstances surrounding the call would still have been admissible on the question of how 'upset and dismay[ed]' [Giana] was during the call, and how 'concern[ed]' [the defendant] was as a result."  The defendant contends that he should receive a new trial because "the call still would have been a real factor in the jury's voluntariness decision, had it been developed at trial."  We do not agree.

Factors relevant to assessing voluntariness "include, but are not limited to, 'promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings.'"  Commonwealth v. Selby, 420 Mass. 656, 663 (1995), quoting Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).

Based on the totality of the circumstances, there was sufficient evidence to establish beyond a reasonable doubt that the defendant's statement on June 23, 2009, was "the product of a 'rational intellect' and a 'free will,' and not induced by physical or psychological coercion," Commonwealth v. LeBlanc, 433 Mass. 549, 554 (2001), even given the defendant's knowledge of Giana's "upset and dismay" on June 22, 2009.

At no time on June 22 or 23, 2009, did the officers interrogating the defendant improperly provide "an assurance, express or implied, that [a confession would] aid the defense or result in a lesser sentence."  See Commonwealth v. Meehan, 377 Mass. 552, 564 (1979).  Indeed, at the defendant's first interview, an officer made clear that "it's going to be up to the DA.  Whatever happens.  OK?  We . . . won't make any promises at all."[14]  During the interview on the following day, initiated by the defendant, an officer stopped to reread the defendant the Miranda warnings; the defendant's waiver of those rights was recorded.[15]  The emotion the defendant displayed

_____

[14] An interrogating officer did tell the defendant, in response to the defendant's concerns for the safety of his family, that "if you do cooperate with us and continue to cooperate with us I'm going to talk to Section 8. . . . [T]hat's something I can do."  "[F]alse 'promises . . . as might excite hopes in the mind of [an interviewee] that he should be materially benefitted by making disclosures' can undermine a defendant's ability to make an autonomous decision to confess, and are therefore properly regarded as coercive."  Commonwealth v. Baye, 462 Mass. 246, 257-258 (2012), quoting Commonwealth v. Taylor, 5 Cush. 605, 610 (1850).  Here, however, the officer's statement was phrased as explaining that he would make an inquiry, and did not promise a result.  Furthermore, the statement was made in response to security concerns raised by the defendant, regarding subjects apart from prospective punishment or leniency.  See Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).  In addition, the officer explicitly repeated that he could not make promises of any kind to the defendant.

[15] The interrogating officer said, "Let's stop.  We read your Miranda."  After beginning to recite the Miranda rights again, the officer asked, "Remember I read you this before?  I want to go over it again to make sure you understand it because it's important. . . .  You heard this before, right?  Yes, no?"

during the June 23, 2009 interrogation was, according to the judge who ruled on the defendant's motion to suppress, "appropriate to the situation; [the defendant] confessed to involvement in a killing." The judge found that the defendant was "not under the influence of alcohol, drugs, or mental illness." This finding is supported implicitly by the absence of any indication in the record that the defendant had been under the influence of drugs or alcohol. Moreover, the defendant now concedes that he was not under the influence of drugs during any of the interrogations.

c. DiGiambattista instruction. The defendant also argues that trial counsel provided ineffective assistance because he did not rely on the telephone call between the defendant and Giana in seeking a DiGiambattista instruction, and because counsel did not request the instruction based on the incomplete recording of the defendant's June 23, 2009 interrogation.[16] As

---

The defendant replied, "Yes." The officer then finished the recitation.

[16] Trial counsel requested a DiGiambattista instruction on the ground that a police officer failed to record interviews of the defendant prior to his interrogation on June 23, 2009. See Commonwealth v. DiGiambattista, 442 Mass. 423, 447-448 (2004). This assertion was inaccurate. Indeed, at the time he sought the instruction, trial counsel was in possession of the recordings, but was unaware of that fact. In any event, the judge denied the defendant's request for a DiGiambattista instruction on the ground that it was not necessary to give such an instruction with respect to "other [unrecorded] discussions at other times [by police officers] . . . with the defendant,"

discussed, the interrogations of the defendant on the evening of his arrest and the following day were recorded. The telephone call with Giana on the night of the defendant's arrest was not recorded. The initial discussion on June 23, 2009, between the defendant and the interrogating officer, regarding Miranda rights, the right to prompt arraignment, and consent to electronic recording, was not recorded.

In DiGiambattista, 442 Mass. at 447, we held that "when the prosecution introduces evidence of a defendant's confession or statement that is the product of a custodial interrogation or an interrogation conducted at a place of detention . . . and there is not at least an audiotape recording of the complete interrogation, the defendant is entitled (on request) to a jury instruction." This instruction advises the jury "that the State's highest court has expressed a preference that such interrogations be recorded whenever practicable, and caution[s] the jury that, because of the absence of any recording of the interrogation in the case before them, they should weigh evidence of the defendant's alleged statement with great caution and care." Id. at 447-448. Further, where, as here, "voluntariness is a live issue and the humane practice instruction is given, the jury should also be advised that the

---

where the Commonwealth was not seeking to introduce evidence from those conversations.

absence of a recording permits (but does not compel) them to conclude that the Commonwealth has failed to prove voluntariness beyond a reasonable doubt." Id. at 448.[17]

The defendant would not have been entitled to a DiGiambattista instruction on the basis of any putative incomplete recordings of the June 22, 2009 interrogations, because those interrogations were distinct from the June 23, 2009 interrogation; at trial, the Commonwealth relied only on statements that the defendant made on June 23, 2009.[18] This defendant's circumstances differ from those of Commonwealth v. Woodbine, 461 Mass. 720, 726, 739-740 (2012), in which we explained that a defendant should have received a DiGiambattista instruction when an interrogating officer capitalized on a strategic decision to record only one part of a "two-stage interrogation," and the recorded portion was suppressed. We described the interrogation as a "two-stage interrogation" because the interrogating officer began questioning a defendant alone, then summoned another detective into the room after the defendant began talking, and only recorded statements the defendant provided to both officers. Id. at 725-726, 739-740.

_____

[17] The judge gave a humane practice instruction.

[18] The fact that, on June 22, 2009, the officers asked the defendant about the shooting on May 22 does not alter our analysis.

By contrast, here the defendant's third interview occurred only because he requested to speak with police, after police indisputably had ceased questioning him more than fifteen hours earlier, the day before.[19]

Moreover, the fact that the defendant's telephone call with Giana was unrecorded would not have entitled him to a DiGiambattista instruction, because the call did not comprise part of the interrogation. Police would not reasonably have known, and the defendant could not reasonably have expected, that facilitating the call in response to the defendant's request would be reasonably likely to elicit an incriminating response from the defendant. See Rhode Island v. Innis, 446 U.S. 291, 301-302 (1980); Commonwealth v. Torres, 424 Mass. 792, 798 (1997). See also Arizona v. Mauro, 481 U.S. 520, 527 (1987) (tape recorded conversation between defendant and his wife was not "functional equivalent" of interrogation, where detective asked no questions about crime or conduct during call, and evidence did not suggest call was psychological ploy).

---

[19] We are satisfied that interrogation of the defendant ceased until "the accused himself initiate[d] further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-485 (1981). We conclude that the defendant's subsequent waiver of his Miranda rights was knowing, intelligent, and voluntary, see discussion supra. Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983), quoting Edwards, supra at 486 n. 9. See Commonwealth v. Thomas, 469 Mass. 531, 549-550 (2014). Contrast Commonwealth v. Hoyt, 461 Mass. 143, 153 (2011).

Nonetheless, it was error for defense counsel not to request a DiGiambattista instruction on the basis of an incomplete recording of the defendant's interrogation on June 23, 2009. As we explained in DiGiambattista, 442 Mass. at 448, an "instruction is appropriate for any custodial interrogation, or interrogation conducted in a place of detention, without regard to the alleged reasons for not recording that interrogation." Accordingly, counsel erred in not requesting a DiGiambattista instruction as a result of the nonrecording of the defendant's initial acknowledgment and waiver of his rights. The absence of a DiGiambattista instruction in this case, however, was not likely to have influenced the jury's conclusion, see Wright, 411 Mass. at 682, and did not result in a substantial likelihood of a miscarriage of justice.

The fact that a brief, introductory portion of the defendant's interrogation on June 23, 2009, was not recorded did not prejudice the defendant. A very short period of time passed between the start of discussions about the defendant's rights and his waiver of them, and the initiation of the recording. "The defendant does not contest the interviewing State police [officer's] testimony as to the introductory nature of the first [few] minutes of the interview, and nothing in the record suggests that any substantive exchange took place during that

time."  Commonwealth v. Vacher, 469 Mass. 425, 444 (2014).[20]

Significantly, the recording does capture a police officer rereading the defendant his Miranda rights, after which the defendant confirmed that he had heard the reading of those rights before, and continued to talk.  In addition, the defendant's signed waiver and consent forms were introduced in evidence, and nearly all the interrogation was recorded and entered as an exhibit.  The jury "accordingly were well situated to determine the voluntariness of the defendant's statements" made on that date.  Vacher, 469 Mass. at 444.  The fact that the defendant initiated the June 23, 2009 interrogation, coupled with the interrogating officer's testimony that the reading of the defendant's rights was unrecorded only because that was standard practice at the time,[21] present no indicia of

---

[20] Before this court, the defendant argues that on June 22, 2009, "marked differences in [the defendant's] affect and demeanor" before and after his call with Giana illustrate that a "substantive exchange" occurred during an unrecorded portion of the interrogation.  As stated, we do not consider the unrecorded telephone call with Giana to comprise part of the interrogation.

[21] The officer explained that it was standard practice at the time to read an individual his or her rights "off the record," get permission to record, and then review on record that the officer had read the individual his or her rights and the individual had agreed to waive them.

intimidation or coercion in relation to the lack of recording.
See Baye, 462 Mass. at 256, quoting Durand, 457 Mass. at 595.[22]

d. Relief pursuant to G. L. c. 278, § 33E. The defendant
argues that we should order a new trial or reduce the verdict of
murder in the first degree because his role in the underlying
felony was limited. We do not agree. This case is not one
where the defendant's conviction "appear[s] out of proportion to
[the] defendant's culpability." Commonwealth v. Brown, 477
Mass. 805, 824 (2017), cert. denied, 139 S. Ct. 54 (2018),
quoting Commonwealth v. Rolon, 438 Mass. 808, 824 (2003). The
jury would have been warranted in finding that the defendant had
been involved in more than the "remote outer fringes" of the
crime that led to the victim's death. The defendant told police
that he had acted as the lookout -- which entails standing guard
at the scene. See Commonwealth v. Zanetti, 454 Mass. 449, 468
(2009) ("knowing[] participat[ion] in the commission of the
crime charged, alone or with others, with the intent required
for that offense"). Compare Brown, supra (verdict reduced where
defendant supplied materials used by others to commit crime
while defendant stayed home).

The defendant also argues that we should reduce the murder
verdict because other individuals involved in the crime were not

---

[22] An unrelated confession, to Rivera, was also before the
jury, through Rivera's testimony.

charged.  It is irrelevant to the defendant's culpability, however, whether other actors were prosecuted for their own involvement in the crime.  See Zanetti, 454 Mass. at 468.

3.  Conclusion.  We have reviewed the record in its entirety, in accordance with our duty under G. L. c. 278, § 33E, and discern no reason to order a new trial or to reduce the verdict of murder in the first degree.  The defendant's convictions and the order denying his motion for a new trial are affirmed.

So ordered.